NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SURENDER MALHAN, MARYANN PETRI, MICHAEL VOLPE,<br><br>                Plaintiffs,<br><br>v.<br><br>MATTHEW PLATKIN, CHRISTINE NORBUT BEYER, COMMISSIONER OF NEW JERSEY DEP'T OF FAMILIES, HEIDI W. CURRI, DAVID KATZ, PETER MELCHIONNE,<br><br>                Defendants. | Civil Action No:  22-6353 (SDW)(LDW)<br><br>**OPINION**<br><br>November 29, 2023 |

**WIGENTON**, District Judge.

Before this Court is Defendants Attorney General Matthew Platkin ("AG Platkin"), Commissioner Christine Norbut Beyer ("Commissioner Beyer") of the Department of Child Protection and Permanency ("DCP&P"), Judge Heidi W. Curri, Judge David Katz, and Judge Peter Melchionne's (collectively, "Defendants") Motion to Dismiss (D.E. 32 ("Motion")) Plaintiffs Surender Malhan, Maryann Petri, and Michael Volpe's ("Plaintiffs") First Amended Complaint (D.E. 8 ("FAC")) pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(6) and 12(b)(1). This opinion is issued without oral argument pursuant to Rule 78 and Local Civil Rule 78.1. For the reasons stated herein, the Motion is **GRANTED**.

    I.        BACKGROUND AND PROCEDURAL HISTORY

This action is one of numerous related federal lawsuits filed by Plaintiff Surender Malhan relating to his divorce and custody proceedings in the Superior Court of New Jersey, Chancery Division:  Family Part, Bergen County. *See Argen v. Katz*, No. 18-963, 2023 WL 3815396 at \*1,

1

n.1 (D.N.J. June 5, 2023) (collecting related actions).[1] Those proceedings resulted in Malhan's loss of custody of his children and an Order that he pay nearly $2,000,000 in attorneys' fees to his ex-wife, which award was entered as spousal and child support arrears in the family court's judgment. (See D.E. 42-1, Ex. A ¶ 22.) This Court presumes familiarity with the procedural history and factual allegations of this and Malhan's many other actions and includes herein only background relevant to the instant motion.

During Malhan's divorce and custody proceedings, then presiding Judge Donald A. Kessler entered a "gag order" on June 18, 2015 ("2015 Gag Order"), which precludes Malhan and the other parties to those proceedings from "speaking with, appearing for an interview, or otherwise discussing any custody information with any reporters, journalists, newscasters or other news media employees or from posting any blogs or information not previously posted or disseminated relating to the children or any custody issue in this case pending further hearing." (D.E. 37-1 at 75.) On February 11, 2020, Judge David B. Katz, who was then presiding over Malhan's state court proceedings and is now a named defendant in this action, entered an Order precluding Malhan, or anyone on his behalf, from "contacting, corresponding with, and/or communicating with any private high school in New Jersey and/or any of their agents or employees" ("School Contact Ban"). (Id. at 84.)

In December 2020, Judge Terry P. Bottinelli replaced Judge Katz as trial judge. (D.E. 8 ¶ 214.) In February 2022, Judge Bottinelli denied Malhan's motions to vacate the 2015 Gag Order.

---

[1] More than twenty-seven actions related to Malhan's divorce and custody proceedings have been filed. *See, e.g.*, *Fam. C.L. Union v. New Jersey*, 837 F. App'x 864 (3d Cir. 2020); *Malhan v. Katz*, 830 F. App'x 369 (3d Cir. 2020); *Malhan v. Sec'y U.S. Dep't of State*, 938 F.3d 453 (3d Cir. 2019); *Allen v. Debello*, 861 F.3d 433 (3d Cir. 2017); *Edelglass v. New Jersey*, No. 14-760, 2015 WL 225810 (D.N.J. Jan. 16, 2015); *Malhan v. Katz*, No. 20-8955.

As discussed in more detail in section III.A., *infra*, this Court's opinion in *Argen*, 2023 WL 3815396 at *3–7, having found that the 2015 Gag Order did not violate the First Amendment rights of Argen, a journalist and member of the media, is applicable to the claims brought by Plaintiffs Petri and Volpe here.

2

(Id. ¶ 39, Ex. 2.) Since Judge Bottinelli's retirement, Judge Peter Melchionne has handled Malhan's case and stated that he intends to enforce all previous orders, including the 2015 Gag Order, in this case. (Id. ¶ 40.) On or about May 6, 2022, Malhan filed a motion with the New Jersey State Court's Appellate Division seeking a stay of the 2015 Gag Order while his appeal was pending. (Id. ¶ 45.) On May 26, 2022, Judge Heidi W. Curri denied Malhan's motion to stay.[2] (Id. ¶ 46.)

Plaintiffs filed this suit on October 25, 2022 (D.E. 1 ("Complaint")) and the FAC on February 6, 2023. (D.E. 8.) On April 14, 2023, Defendants moved to dismiss the FAC in its entirety on the grounds of, *inter alia*, sovereign immunity, judicial immunity, quasi-judicial immunity, *res judicata*, and failure to state a claim. (D.E. 33.) The parties timely completed briefing. (D.E. 33, 36, 39.) During the pendency of this motion, Plaintiffs filed a motion to amend the FAC (D.E. 37), which was denied by Magistrate Judge Leda D. Wettre's Opinion and Order on August 24, 2023. (D.E. 43.)

## II.    LEGAL STANDARDS

### A.  Rule 12(b)(6)

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a showing, rather than a blanket assertion, of an entitlement to relief" (internal quotation marks and citation omitted)).

---

[2] Defendants Judge Currier, Judge Katz, and Judge Melchionne are collectively referred to as "Judge Defendants" hereafter.

In considering a motion to dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

### B. Rule 12(b)(1)

Rule 12(b)(1) permits a court to dismiss a complaint or portions of a complaint for lack of subject matter jurisdiction. "Challenges to subject matter jurisdiction under Rule 12(b)(1) may be facial or factual." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006) (internal quotation marks and citation omitted). "A facial attack contests the sufficiency of the pleadings, whereas a factual attack concerns the actual failure of a [plaintiff's] claims to comport [factually] with the jurisdictional prerequisites." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).

"[A] facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), *i.e.*, construing the alleged facts in favor of the nonmoving party." *Id*. (citation omitted). In reviewing a factual attack, a district court

4

may, however, "consider and weigh evidence outside the pleadings to determine if it has jurisdiction." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000). Regardless of which approach is used, a plaintiff has the burden of proving that jurisdiction exists. *Lightfoot v. United States*, 564 F.3d 625, 627 (3d Cir.2009) (citing *Carpet Grp. Int'l v. Oriental Rug Imps Ass'n*, 227 F.3d 62, 69 (3d Cir.2000)).

### III. DISCUSSION

Malhan, joined by two freelance reporters—Maryann Petri and Michael Volpe (together "Press Plaintiffs"), attempts once again to challenge the validity of the 2015 Gag Order and School Contact Ban that have been litigated in and upheld by this Court and the Third Circuit.[3] Malhan additionally seeks declaratory and injunctive relief relating to money allegedly seized by the State of New Jersey to satisfy his child and spousal support obligations. (See D.E. 8.) This Court will address Plaintiffs' claims in turn.

#### A. Plaintiffs' Claims Challenging the 2015 Gag Order (Counts I to IV and XI)

Plaintiffs contend that the 2015 Gag Order[4] is void and unconstitutional. Plaintiffs' claims, however, will be dismissed under *res judicata* because this Court and the Third Circuit have already upheld the constitutionality of the 2015 Gag Order. *See Att'y Gen. of N.J.*, 2022 WL 3369109 at *1, 5–6 (affirming this Court's dismissal of Malhan's First Amendment challenges to the 2015 Gag Order under *res judicata*); *Argen*, 2023 WL 3815396 at *7 (holding that the 2015

---

[3] *See, e.g.*, *Malhan v. Katz*, No. 20-8955, D.E. 30 at 2, n.3 (D.N.J. Oct. 21, 2020), *aff'd* 850 F. App'x 838 (3d Cir. 2021); *Argen v. Katz*, No. 18-963, 2021 WL 2850427 at *3, (D.N.J. July 8, 2021), *aff'd sub nom. as to dismissal of Malhan's claims*, *Argen v. Att'y Gen. of N.J.*, No. 21-2571, 2022 WL 3369109 (3d Cir. Aug. 22, 2022); *Edelglass v. New Jersey*, No. 14-760, 2015 WL 225810 at *8 (D.N.J. Jan. 16, 2015) (dismissing complaint where "Malhan asserted that he was subject to a 'gag order' without due process"), *aff'd sub nom. Allen v. DeBello*, 861 F.3d 433 (3d Cir. 2017); *Fam. C.L. Union*, 837 F. App'x. 864 (affirming the district court's dismissal of Malhan's due process claims against a state agency and officials arising out of child custody proceedings) (collectively "the Malhan Cases").

[4] Plaintiffs inaccurately characterize in their FAC that Judge Bottinelli's February 2022 judgment in the New Jersey Superior Court denying Malhan's motion to vacate the 2015 Gag Order is a separate, new gag order. (See D.E. 8 at 3, 5, Ex. 2.)

5

Gag Order did not violate the First Amendment rights of another similarly situated reporter), *reconsideration denied*, No. 18-963, 2023 WL 4866099 (D.N.J. July 31, 2023).

"Both New Jersey and federal law apply *res judicata* or claim preclusion when three circumstances are present: (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Hoffman v. Nordic Nats., Inc.*, 837 F.3d 272, 279 (3d Cir. 2016) (quoting *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008)).

"When determining whether two suits are based on the same cause of action, the Third Circuit takes a 'broad' approach and directs district courts to look at the 'essential similarity of the underlying events giving rise to the various legal claims.'" *Simoni v. Luciani*, 872 F. Supp. 2d 382, 390 (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 261 (3d Cir. 2010)). "[T]he mere inclusion of a new cause of action in a subsequent complaint will not rescue a lawsuit from *res judicata* where the underlying events that give rise to the new allegations are essentially the same as those in the earlier action." *Jarvis v. Analytical Lab. Servs.*, 499 F. App'x 137, 139 (3d Cir. 2012).

The essential similarity test is guided by four factors: "(1) whether the acts complained of and the demand for relief are the same . . . ; (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same . . . ; and (4) whether the material facts alleged are the same." *Sheridan*, 609 F.3d at 261 (quoting *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 984 (3d Cir. 1984)) (omissions in original). "It is not dispositive that a plaintiff asserts a different theory of recovery or seeks different relief in the two actions." *Id*.

The first element of *res judicata* is met because this Court and the Third Circuit have rendered a final judgment on Malhan's claims attacking the 2015 Gag Order's constitutionality

6

and enforceability. *See, e.g.*, *Katz*, No. 20-8955, D.E. 30 at 2, n.3 (discussing this Court's dismissal of Malhan's claims attacking the 2015 Gag Order and the School Contact Ban), *aff'd* 850 F. App'x 838 (3d Cir. 2021); *Att'y Gen. of N.J.*, 2022 WL 3369109 (affirming the district court's dismissal of Malhan's First Amendment challenges to the Gag Order with prejudice); *Argen*, 2023 WL 3815396 at *7 (dismissing Argen's First Amendment claim on its merits).

The second element is satisfied because Argen, a reporter who unsuccessfully joined Malhan in prior lawsuits to challenge the 2015 Gag Order, *see, e.g.*, *Argen*, 2023 WL 3815396 at *7, is a privy to the Press Plaintiffs.  Several factors weigh in favor of finding privity.  The Press Plaintiffs are represented by the same attorney who also represented Malhan and Argen in prior suits seeking to vacate the 2015 Gag Order; the Press Plaintiff's legal interests in the present action are the same as those of Argen's in prior suits; and the FAC arises out of the same occurrence of events.  *See Eason v. Linden Avionics, Inc.*, 706 F. Supp. 311, 316 (D.N.J. 1989) (finding that although the plaintiffs are different in each suit, the privity requirement is satisfied when the plaintiffs in the previous and subsequent suits are "each represented by the same law firm, [and] the complaints arise out of a single occurrence"); *cf. Fam. C.L. Union v. State*, 386 F. Supp. 3d 411, 441 (D.N.J. 2019) (finding that defendant state judges stood in privity with other state judges named as defendants in a prior suit as "the legal interests of the judges in both suits are identical").

As for the third element, all four essential similarity factors are satisfied here.  The acts complained of and the relief sought in the FAC are virtually the same as those in the Malhan Cases. *See, e.g.*, *Argen*, 2023 WL 3815396 at *2 ("Malhan and Paul Argen . . . filed suit in this Court challenging the constitutionality of the Gag Order pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201, and seeking to enjoin enforcement of the Gag Order.").  The same witnesses and documents will be necessary if the present case goes to trial, as

the FAC arises from the same occurrences and alleges the same material facts. *See Att'y Gen. of N.J.*, 2022 WL 3369109 at *2 ("Although [Malhan's] 2020 Complaint described new occurrences that had taken place after [Malhan] filed [his] 2018 Complaint, the later-in-time Complaint concerned the same 2015 gag order in the same family court proceeding that was challenged in the earlier-in-time Complaint.").

The theories of recovery in the present action are virtually identical to those from the Malhan Cases as the FAC asserts claims under § 1983 alleging that the 2015 Gag Order has violated Plaintiffs' First Amendment rights and Malhan's due process rights. *See, e.g.*, *Edelglass*, 2015 WL 225810 at *8 (dismissing complaint where "Malhan asserted that he was subject to a 'gag order' without due process"); *Katz*, No. 20-8955, D.E. 1 at 1–2 (D.N.J. July 15, 2020) (stating that Malhan brought this § 1983 action seeking "declaratory and injunctive relief" against "enforcement of various 'gag orders' imposed by the State of New Jersey" under the First and Fourteen Amendment); *Argen*, 2023 WL 3815396 at *7 (concluding that the 2015 Gag Order did not violate the First Amendment rights of Malhan or members of the press). Even assuming there is a new theory of recovery here, "[a] mere difference in the theory of recovery is not dispositive," and a plaintiff's "[reliance] on a new theory of [recovery] will not prevent preclusion." *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991).

In sum, this Court already adjudicated and dismissed claims challenging the constitutionality of the 2015 Gag Order by Malhan and members of the press. Malhan cannot re-litigate the same claims by enlisting the Press Plaintiffs in the present action. Therefore, Counts I to IV and XI are barred by *res judicata* and must be dismissed with prejudice.

### B. Malhan's Claims Challenging the State Court's Child and Spousal Support Orders (Counts V to X)

Malhan asks this Court to intervene with respect to the state court's child and spousal support orders and the enforcement of such orders. Specifically, Malhan seeks the return of money allegedly seized from his tax refunds, bank account, and sale of property to satisfy his spousal and child support obligations and an injunction barring the State of New Jersey from seizing or placing a lien on his property for overdue support payments. Counts V to X will be dismissed with prejudice because this Court lacks subject matter jurisdiction to review them.

As an initial matter, this Court has no diversity jurisdiction over Counts V to X under the domestic relations exception. The domestic relations exception precludes diversity jurisdiction over "cases involving the issuance of a divorce, alimony, or child custody decree." *Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992); *see Matusow v. Trans-Cnty Title Agency, LLC.*, 545 F.3d 241, 245 (3d Cir. 2008) (holding same). The domestic relations exception applies with equal force even when a complaint brings claims "under the federal constitution." *Jonas v. Gold*, No. 13-2949, 2014 WL 4854484 at *7, n.10 (D.N.J. Sept. 30, 2014) (quoting *Galtieri v. Kane*, No. 03-2994, slip op. at 3 (3d Cir. Mar. 4, 2004)), *aff'd* 627 F. App'x 134 (3d Cir. 2015).

Here, Malhan seeks the return of garnished payments for child and spousal support, thereby requiring this Court to review the State court's divorce judgment and spousal/child support orders. The domestic relations exception, however, divests this Court of the power to do so. *See Green v. Domestic Rels. Section Ct. of Common Pleas Compliance Unit Montgomery Cnty.*, 649 F. App'x 178, 180 (3d Cir. 2016) (affirming the district court's dismissal of plaintiff's claims and its reason that it had no subject matter jurisdiction to review a state court's spousal support order).

Plaintiffs similarly fail to establish federal question jurisdiction. A complaint cannot invoke federal question jurisdiction by merely citing or mentioning a federal statute. *See Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 813 (2011) (holding that "the mere presence of a

9

federal issue "does not automatically confer federal-question jurisdiction"); *Kalick v. United States*, 604 F. App'x 108, 111 (3d Cir. 2015) ("[C]onclusory allegations of a federal question . . . are legally insufficient to support jurisdiction in the federal courts under § 1331."); *Malhan v. Grewal*, No. 16-8495, 2021 WL 4473104 at *8 (D.N.J. Sept. 30, 2021) ("[T]he Declaratory Judgment Act does not create an independent basis for federal jurisdiction."), *aff'd sub nom. Malhan v. New Jersey*, No. 21-2969, 2023 WL 1793873 (3d Cir. Feb. 7, 2023). Here, Plaintiffs do not raise any federal claims other than that the 2015 Gag Order is a violation of their First Amendment rights; that claim is barred by *res judicata*, as discussed above.

Because this Court has no subject matter jurisdiction over Malhan's spousal and child support claims, Counts V to X are dismissed with prejudice.

### C. Defendants Are Entitled to Dismissal with Prejudice on Immunity Grounds

To the extent this Court has subject matter jurisdiction over any of Plaintiffs' claims that are not barred by *res judicata*, those claims will be dismissed with prejudice pursuant to sovereign immunity, absolute judicial immunity, and quasi-judicial immunity.

#### i. Defendants are shielded by sovereign immunity

The Eleventh Amendment "immunize[s] an unconsenting state 'from suits brought in federal courts by her own citizens as well as by citizens of another state.'" *Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655, 658–59 (3d Cir. 1989) (en banc) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (internal quotation marks and citation omitted). A suit brought against an actor, state agency, or department that is in essence "an arm of the state" is also barred by the Eleventh Amendment. *Id.* at 658; *see also Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 551 F.3d 193, 198 (3d Cir. 2008) (finding that the shield of Eleventh Amendment sovereign immunity extends to "subunits of the State"). A state agency, department,

or employee is an "arm of the state" and is entitled to immunity from suit when a judgment against it "would have had essentially the same practical consequences as a judgment against the State itself." *Fitchik*, 873 F.2d at 659.

The Third Circuit has concluded that DCP&P and its employees, along with employees and judges of the state judiciary, are "arms" of the State of New Jersey and covered by sovereign immunity. *See Fam. C.L. Union*, 837 F. App'x at 867; *Howard v. N.J. Div. of Youth & Fam. Servs.*, 398 F. App'x 807, 811–12 (3d Cir. 2010) (dismissing claims against DCP&P and its employees under sovereign immunity); *Dongon v. Banar*, 363 F. App'x. 153, 156 (3d Cir. 2010) (holding that New Jersey state courts and their employees and judges are entitled to sovereign immunity because they are "arms" of the state). Therefore, Plaintiffs' claims against Defendants in both their official and individual capacities are barred by sovereign immunity.

The FAC asserts that an exception to sovereign immunity applies as this lawsuit is for prospective injunctive and declaratory relief under the doctrine of *Ex parte Young*. Under *Ex parte Young*, a state official may be "stripped of his official or representative character" and "thereby deprived of the State's immunity when he commits an 'ongoing violation of federal law.'" *Waterfront Comm'n of N.Y. Harbor v. Governor of N.J.*, 961 F.3d 234, 238 (3d Cir. 2020) (quoting *Ex parte Young*, 209 U.S. 123, 159–60 (1908)). Plaintiffs' argument is misplaced.

*Ex parte Young* applies only where the plaintiff seeks prospective relief and "only to the 'precise situation' of 'a federal court command[ing] a state official to do nothing more than refrain from violating federal law.'" *Id*. (quoting *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253–54 (2011)). The doctrine does not apply where, as here, a plaintiff seeks disgorgement of money allegedly seized or any other form of retroactive relief. *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 697 (3d Cir. 1996) ("[R]elief that essentially serves to compensate a party

11

injured in the past by the action of a state official, even though styled as something else, is barred by the Eleventh Amendment."). Accordingly, Plaintiffs' claims are barred by sovereign immunity, and Defendants are entitled to dismissal with prejudice.

> ii. *The Judge Defendants are protected by absolute judicial immunity*

To the extent that the FAC asserts any claims against the Judge Defendants that are not barred by *res judicata*, sovereign immunity, or this Court's lack of subject matter jurisdiction, they will be dismissed with prejudice on the grounds of absolute judicial immunity.

"A judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for his judicial acts." *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006) (per curiam). A judge retains that immunity even if "the action he took was in error, was done maliciously, or was in excess of his authority; . . . he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978); *see Figueroa v. Blackburn*, 208 F.3d 435, 444 (3d Cir. 2000) (noting that immunity attaches so long as the court "has some subject matter jurisdiction") (citation omitted). A judicial act is subject to absolute immunity if (1) it is "a function normally performed by a judge"; and (2) the parties "dealt with the judge in his judicial capacity." *Id.* at 443 (citation omitted).

Here, the FAC contains no allegations that, taken as true, would disqualify any of the Judge Defendants from absolute judicial immunity. The FAC alleges that: Judge Curri denied Malhan's motion to stay the 2015 Gag Order pending his appeal in state court; Judge Katz denied Malhan's motions to vacate the 2015 Gag Order, enforced the gag order, and suspended Malhan's custody of his children; and Judge Melchionne took over Malhan's state court case from Judge Bottinelli and declared his intent to enforce all previous orders in Malhan's case. (See D.E. 8 at 6–7, 21–22, 26–27, 29.) These acts are judicial in nature and were not taken in the absence of clear jurisdiction.

*See Burrell v. Loungo*, 750 F. App'x 149, 155 (3d Cir. 2018) (holding that state court judges who signed orders in underlying child support enforcement proceedings had absolute immunity).

Because Malhan's claims arise from the Judge Defendants' performance of their judicial duties enforcing a constitutional gag order and adjudicating child custody and support disputes, they are barred by absolute judicial immunity even if the Judge Defendants acted erroneously or out of malice.[5]

### iii. *Defendants AG Platkin and Commissioner Beyer are protected by quasi-judicial immunity*

To the extent that the FAC asserts individual capacity claims against Commissioner Beyer and AG Platkin that are not dismissed because of *res judicata*, sovereign immunity, or this Court's lack of subject matter jurisdiction, they will be dismissed with prejudice as they are barred by quasi-judicial immunity.

Because the fair administration of justice depends not only on judges, courts have extended quasi-judicial immunity to protect those who serve as "arms of the court, . . . fulfill[ing] a quasi-judicial role at the court's request . . . ." *Russell v. Richardson*, 905 F.3d 239, 247 (3d Cir. 2018) (internal quotation marks and citation omitted); *see Dotzel v. Ashbridge*, 438 F.3d 320, 325 (3d Cir. 2006) ("Regardless of his job title, if a state official must walk, talk, and act like a judge as part of his job, then he is as absolutely immune from lawsuits arising out of that walking, talking, and acting as are judges who enjoy the title and other formal indicia of office."). Like judicial

---

[5] Some prior opinions in the Malhan Cases have noted that judicial immunity does not apply when a judge "has acted in clear absence of all jurisdiction." *Fam. C.L. Union*, 386 F. Supp. 3d at 444; *see also Grewal*, 2021 WL 4473104, at *5. In addition, the Third Circuit has stated in a non-precedential opinion that a judge's entry of a gag order "is administrative in character and concerns a 'non-merits issue'" and that "a judge who makes and enforces a rule of an administrative character 'can be sued under Section 1983 for declaratory . . . relief.'" *Argen v. Att'y Gen. N.J.*, No. 21-2571, 2022 WL 3369109, at *3 (3d Cir. Aug. 16, 2022) (omission in original). However, as the 2015 Gag Order has been previously upheld by this Court and affirmed by the Third Circuit, enforcement of same would be protected by judicial immunity.

13

immunity, quasi-judicial immunity applies to individual capacity suits brought against public servants. *See Hamilton v. Leavy*, 322 F.3d 776, 782–83 (3d. Cir. 2003).

The Third Circuit takes a "functional approach to immunity" in determining whether a government actor's conduct is quasi-judicial. *Id.* (quoting *Forrester v. White*, 484 U.S. 219, 224 (1988)). That is, a reviewing court will "examine the nature of the functions with which a particular official or class of officials has been lawfully entrusted, and [will] seek to evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions." *Russell*, 905 F.3d at 247.

Here, the FAC does not make specific factual allegations about Commissioner Beyer other than that she continues to enforce the 2015 Gag Order. (D.E. 8 ¶¶ 32–33.) Similarly, the only factual allegations against AG Platkin in the FAC are that he was charged to protect the confidentiality of DCP&P records and conspired with the Judge Defendants to deprive Plaintiffs of free speech. (Id. ¶¶ 50–51). In other words, the FAC merely alleges that Commissioner Beyer and AG Platkin continued to enforce the 2015 Gag Order, which is a quasi-judicial function entitled to immunity. *See Holder v. DCF*, No. 12-74, 2016 WL 590210 at *3 (D.N.J. Feb. 11, 2016) ("[DCP&P] caseworkers, employees, supervisors, and directors, as well as New Jersey Deputies Attorney General and the Attorney General[,] are entitled to absolute immunity where these individuals are 'performing judicial acts within the jurisdiction of the Superior Court, Family Part.'") (alteration omitted); *Lepre v. Tolerico*, 156 F. App'x 522, 525 (3d Cir. 2005) (holding that family court officers were entitled to quasi-judicial immunity for their actions in filing a petition enforcing family court's support order).

Accordingly, Plaintiffs' claims against Commissioner Beyer and AG Platkin will be dismissed with prejudice.

### IV. CONCLUSION

For the reasons set forth above, Defendants' Motion is hereby **GRANTED**. Plaintiffs' FAC will be dismissed with prejudice. An appropriate order follows.

                                                    /s/ Susan D. Wigenton
                                             **SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk
cc: Leda D. Wettre, U.S.M.J.
      Parties